UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS CORBIA and GINGER CORBIA,

Plaintiffs,

-against-

PORT CHESTER-RYE UNION FREE SCHOOL
DISTRICT, PORT CHESTER-RYE UNION
FREE SCHOOL DISTRICT BOARD OF
EDUCATION, DR. EDWARD KLISZUS,
CHRISSIE ONOFRIO, LUIGI RUSSO and
CHRISTOPHER WOLF,

Defendants.

**OPINION & ORDER**

23-CV-08227 (PMH)

PHILIP M. HALPERN, United States District Judge:

Thomas Corbia and Ginger Corbia ("Plaintiffs") commenced this action against Port Chester-Rye Union Free School District, Port Chester-Rye Union Free School District Board of Education, Dr. Eduard Kliszus, Chrissie Onofrio, Luigi Russo, and Christopher Wolf (together, "Defendants") on September 18, 2023. (Doc. 1). Plaintiffs filed a First Amended Complaint on December 20, 2023, alleging violations of their First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, conspiracy in violation of § 1983, and state law claims for negligent infliction of emotional distress and loss of consortium. (Doc. 20, "FAC").

A pre-motion conference was held on February 13, 2024 regarding Defendants' anticipated motion to dismiss the First Amended Complaint. (*See* Feb. 13, 2024 Minute Entry). At the conference, the Court granted Plaintiffs leave to file a Second Amended Complaint by February 23, 2024. (*Id*). On February 20, 2024, Plaintiffs advised the Court that they would not be filing a Second Amended Complaint. (Doc. 24). The parties proceeded to brief the motion to dismiss pursuant to the briefing schedule set by the Court. (*Id.*).

Defendants moved to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on March 29, 2024. (Doc. 26; Doc. 27, "Silverman Aff."; Doc. 28, "Def. Br."). Plaintiffs served their opposition on April 26, 2024 (Doc. 30, "Pl. Br."), and Defendants' motion to dismiss was fully briefed with the filing of their reply memorandum of law (Doc. 29, "Reply") and all motion papers on May 10, 2024.

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## **BACKGROUND**

Plaintiff Thomas Corbia ("Corbia"), a Republican, served as an elected member of the Port Chester-Rye Board of Education (the "Board") from 2012 to 2015 and then 2017 to 2021. (FAC ¶ 17). Plaintiff Ginger Corbia is Thomas Corbia's wife. (*Id.* ¶ 5). As of April 2021, Corbia was President of the Board; Defendant Dr. Eduard Kliszus was the Superintendent of Schools; and Defendants Chrissie Onoforio, Luigi Russo, and Christopher Wolf were members of the Board. (*Id.* ¶¶ 1, 19-22).

On September 18, 2020, Dr. Kliszus filed charges against Corbia with the School Board Ethics Committee (the "Ethics Committee"), accusing Corbia of commenting upon or forwarding two purportedly "racist" Facebook posts. (*Id.* ¶¶ 2, 23). Corbia maintains that the Facebook posts were "not made by [him] and even if forwarded . . . it was not done on any electronic device owned, controlled or operated by the School District . . . ." (*Id.* ¶ 37). The Ethics Committee convened on September 18, 2020, and recommended that the Board retain a forensic investigator to search Corbia's electronic devices. (*Id.* ¶ 24). On September 22, 2020, the Board hired T&M Protection Resources, LLC ("T&M") to conduct an investigation of Corbia. (*Id.* ¶ 25). Thereafter, the Board hired a private law firm to assist and direct the investigation. (*Id.* ¶ 26). Plaintiff alleges that he cooperated with the Ethics Committee, including meeting with them in

2

person and offering to turn over his phone. (*Id.* ¶ 43). On November 11, 2020, the Ethics Committee issued its report as inconclusive and returned the matter to the Board for further action. (*Id.* ¶ 27). On December 15, 2020, T&M issued a report that reached no conclusion of wrong-doing but blamed Corbia for his lack of cooperation. (*Id.* ¶ 28).

On February 8, 2021, the Board appointed a Hearing Officer to prosecute Corbia for misconduct pursuant to Section 1709 of the New York State Education Law. (*Id.* ¶ 29). Following a multi-day hearing in March 2021, which Corbia did not attend but appeared through counsel, the Hearing Officer issued a report and opinion recommending Corbia's removal. (*Id.* ¶¶ 30, 43). The stated reasons for removal were (i) "failure to cooperate with investigation"; and (ii) "disclosure of confidential information to an unauthorized third party." (*Id.* ¶ 33). Plaintiff denies having forwarded the Ethics Committee report to an "unauthorized third party" and maintains that he only ever communicated with his attorney. (*Id.* ¶¶ 47, 50-51). On April 14, 2021, the Board voted to remove Corbia. (*Id.* ¶¶ 17, 31). The vote was along party/philosophical lines, with members of the Board's "Liberal/Democrat" wing voting in favor of removal.[1] (*Id.*).

Plaintiffs contend that the Board's investigation, prosecution, and removal of Corbia from the Board were motivated by Defendants' "personal and philosophical animus" and done maliciously to remove a political rival. (*Id.* ¶¶ 36, 39, 52). Plaintiffs also allege that the investigation was conducted to retaliate against Corbia for his stated views and positions as a Republican that were in opposition to those of Defendants Onoforio, Ruso, and Wolf—namely, his differing views on "Board business and issues" such as the One World program, various

---

[1] The Court notes a typographical error in paragraph 31 of the First Amended Complaint, which alleges that Corbia was removed from office on April 24, 2021 rather than April 14, 2021. (FAC ¶ 31). The First Amended Complaint and the parties' briefing otherwise makes clear that Corbia was removed from office on April 14, 2021. (*Id.* ¶¶ 1, 17; Pl. Br. at 9).

budgetary issues, and termination of instructors. (*Id.* ¶¶ 35, 60). Corbia alleges that he incurred damages on the basis of extreme mental distress and physical injury, injury to reputation, loss of office, and legal fees. (*Id.* ¶¶ 53, 68). Plaintiff Ginger Corbia alleges that she was damaged by virtue of loss of consortium. (*Id.* ¶ 78).

This litigation followed.

## STANDARD OF REVIEW

### I.    Federal Rule of Civil Procedure 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.    <u>Documents Considered</u>

On a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.").

Here, Defendants submit twelve exhibits attached to the affirmation of attorney Lewis Silverman in support of their motion to dismiss. (Silverman Aff., Exs. A-L). These exhibits

include, *inter alia*, the parties' communications regarding a 50-h Examination (*id.*, Ex. C), the Ethics Committee's report (*id.*, Ex. E), the Hearing Officer's report (*id.*, Ex. H), the Commissioner of Education's Decision (*id.*, Ex. J), and the Facebook posts (*id.*, Ex. L). The Court considers the Facebook posts attached to the Silverman Affirmation as Exhibit L because they are referred to in the First Amended Complaint and integral to Plaintiffs' retaliation claim. (FAC ¶¶ 23, 36-39). The Court also takes judicial notice of the Commissioner of Education's Decision attached to the Silverman Affirmation as Exhibit J, as discussed *infra*. The Court otherwise declines to consider the extraneous documents proffered by Defendants because while they certainly shed light on the details of what transpired during the investigation and hearing, and in that sense are referred to in the First Amended Complaint, the exhibits do nothing to amplify or modify the salient allegations concerning the numerous constitutional claims made here.

## ANALYSIS

I.    <u>First Claim for Relief: Constitutional violations pursuant to § 1983</u>

Plaintiffs' First Claim for Relief encompasses claims for violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments pursuant to § 1983. (FAC ¶¶ 34-55). The Court considers each alleged constitutional violation *seriatim*.

A.    First Amendment

The crux of Plaintiffs' First Amendment claim is that Defendants investigated, prosecuted, and removed Corbia from the Board in retaliation for his Facebook posts and opposing political views. (*Id.* ¶¶ 2-4, 35-40).

 "The First Amendment bars state officials from stripping elected representatives of their office based on the political views of such representatives." *Velez v. Levy*, 401 F.3d 75, 98 (2d Cir. 2005). Courts in the Second Circuit, in the context of intra-legislative retaliation, "evaluate a

plaintiff's claim 'as a more basic sort of retaliation claim' rather than 'as a straightforward employment retaliation suit.'" *King v. City of New York*, No. 22-231, 2023 WL 2398679, at *1 (2d Cir. Mar. 8, 2023) (quoting *Velez*, 401 F.3d at 97). "[A]n elected official plaintiff may state a claim for such retaliation by pleading that (1) his actions were protected by the First Amendment; and (2) the defendant's alleged conduct was in response to that protected activity." *Id.* Courts in the Second Circuit "consider as actionable a defendant's alleged retaliatory conduct that triggers official discipline or expulsion, but not expressive conduct that may 'set into motion' those actions." *Id.*; *see also Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-CV-06823, 2023 WL 5586680, at *9 (S.D.N.Y. Aug. 29, 2023).

As a threshold matter, Defendants argue that any First Amendment protection is limited to the Board vote adopting the Hearing Officer's recommended sanction to remove Corbia from office. (Def. Br. at 18-20). Defendants relatedly argue that any claims against Defendant Kliszus, who did not participate in the vote, are not actionable. (*Id.*). Plaintiffs disagree that protection is so limited and assert that "[t]he ENTIRE investigation was retaliatory in nature and therefore void ab initio." (Pl. Br. at 13-14). Accepting the allegations in the First Amended Complaint as true, the investigation into Corbia's Facebook posts directly resulted in the Hearing Officer's recommended sanction to remove Corbia from the Board, which the Board voted to adopt. Accordingly, at this stage, the Court will not narrow the scope of First Amendment protection to Defendants' conduct in voting for removal. The Court considers all of Defendants' alleged conduct as actionable for purposes of this motion.

### i. Protected Activity

With respect to the first element, Plaintiffs allege that Corbia was investigated and subsequently removed from the Board for (i) commenting upon or forwarding to other

individuals the purportedly racist Facebook posts (FAC ¶¶ 2, 23); (ii) his stated views and positions as a Republican (*id.* ¶ 35); and (iii) his taking disparate and differing views on Board business and issues (*id.*).

Turning first to the Facebook posts, Plaintiffs allege that Dr. Kliszus "accus[ed] Corbia of commenting upon or forwarding" the two posts. (*Id.* ¶ 23). Plaintiffs further allege that "[s]aid Facebook post was not made by Corbia and even if forwarded, as alleged, it was not done on any electronic device owned . . . by the School District." (*Id.* ¶ 37). Defendants argue that by denying having made the Facebook posts, Corbia has not plausibly alleged that he engaged in speech. (Def. Br. at 26). Plaintiffs respond that regardless of whether he made the posts, all that matters is that "[t]he content was attributed to him." (Pl. Br. at 30). Neither party provided legal authority in support of its argument as to whether attribution of speech to an individual is sufficient to plead that he engaged in such speech. Accordingly, the Court is unable to conclude based on Defendants' presentation at this juncture that Plaintiffs have failed to establish as a matter of law that Corbia engaged in protected speech through the Facebook posts that appeared on his social media page.

Second, Plaintiffs allege that Defendants retaliated against Corbia for "his stated views and positions and because he is a[] Republican." (FAC ¶ 35). Pursuant to *Velez*, the voicing of "unsympathetic political views" are "at the core of what is protected by the First Amendment." 401 F.3d at 97. The "basic allegation, that [a state actor] took concrete actions to effectuate [the plaintiff's] removal from the board in retaliation for her political positions, suffices to state a constitutional claim of this sort." *Id.* at 98. Accordingly, albeit in very few words, Plaintiffs have sufficiently pled that Corbia was removed for voicing his political views as a Republican.

Finally, Plaintiffs allege that Corbia was retaliated against for taking "disparate and differing views on Board business and issues including the opposition to the One World program and various budgetary issues and the termination of instructors," all of which were positions supported by Defendants Russo, Onofrio and Wolf. (FAC ¶ 35). Plaintiffs argue, and Defendants dispute, that this speech is protected because Corbia's positions on Board business are "clearly matters of public concern in the school community." (Pl. Br. at 19-20; Def. Br. at 25-26; Reply at 12). In determining whether a public employee spoke as a citizen on a matter of public concern, courts consider two separate sub-questions: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcetti*, 547 U.S. at 421 (quoting *Connick v. Myers*, 461 U.S. 138, 421 (1983)).

Here, the bare allegations that Corbia had taken disparate and differing views on Board business and issues" (FAC ¶ 35) provide no context as to when or how such speech occurred, or to whom it was directed. The specific examples of topics spoken about (*i.e.*, One World program, budget, and instructor terminations) appear on their face to be the types of issues that would be discussed pursuant to Board members' official duties. The Court cannot conclude based on the four corners of the First Amended Complaint that Corbia's taking of disparate and differing views on Board business constituted protected speech as a private citizen on a matter of public concern.

Accordingly, Plaintiffs' First Amendment retaliation claim survives only as to their theories that the Facebook posts and Corbia's expression of political views as a Republican are protected speech.

*ii.   Causal Connection*

With respect to the second element, Defendants argue that Plaintiffs' retaliation claim fails because they allege no specific facts linking any of Defendants' actions to Corbia's alleged speech and, in any event, the misconduct charges against Corbia provide an alternative explanation for the removal. (Def. Br. at 21-28).

First, despite the brevity of Plaintiffs' allegations, the Court finds that Plaintiffs have plausibly alleged that Corbia's removal was a result of the Facebook posts and/or his expression of political views. There is no dispute that the investigation which ultimately led to his removal was commenced because of the Facebook posts. (FAC ¶ 39; Def. Br. at 10-11). Moreover, Plaintiffs allege that the investigation, prosecution, and removal were "purely political," as evidenced by the fact that the Board vote to remove Corbia was along "party/philosophical lines." (FAC ¶¶ 4, 31). Plaintiffs further allege that the "investigation, hearings and removal would not have occurred but for the fact that Corbia was a Republican, and/or philosophically and politically in opposition to Onofrio, Ruso, and Wolf," and that Defendants used the proceedings to remove Corbia as a "political rival." (*Id*. ¶¶ 36, 52, 60). At this stage, Plaintiffs have plausibly alleged that Corbia was removed because of his political views.

Regarding the misconduct charges brought against Corbia, Plaintiffs allege that the stated grounds for removal were that Corbia failed to cooperate in the investigation and made a disclosure to an unauthorized third party. (*Id*. ¶ 33). Plaintiffs further allege that these reasons were untrue because Corbia did cooperate with the investigation and did not make a disclosure to

10

an unauthorized third party. (*Id.* ¶¶ 3, 4, 33, 44, 47). The Court cannot resolve on the face of the pleadings this fact issue as to whether Corbia engaged in the charged misconduct, let alone whether such misconduct was the true reason for Corbia's removal from the Board.[3] The Court also does not find that the alleged misconduct constitutes an "obvious alternative explanation" for Corbia's removal from the Board that warrants dismissal at this early stage of proceedings. (Def. Br. at 22).[4]

Accordingly, Defendants' motion is denied as to Plaintiffs' claim for violation of the First Amendment.[5]

### B.  Fourth Amendment

The First Amended Complaint generally asserts that Corbia's rights were violated pursuant to the Fourth Amendment. (FAC ¶¶ 1, 5, 44, 59). The FAC does not, however, provide any specific allegations underlying this purported constitutional violation. (*See generally id.*).

---

[3] Defendants may raise this argument again at a later stage on a more fulsome record.

[4] *Cf. King*, 2023 WL 2398679, at *2 (finding it "implausible that the [defendants'] actions were motivated by political disagreements from years earlier" where plaintiff was alleged to have "retaliated against his staff; permitted workplace harassment within his office; permitted his spouse to use government resources for her personal purposes; failed to reimburse staff for expenses; and objected when a staff member posted images of the New York City Pride March to his personal Twitter account. . . [and] failed to pay his earlier fine; had not cooperated with the monitor overseeing his office; made a harassing comment to one staffer about her menstruation; and demanded a kickback from another.").

[5] Defendants argue, and Plaintiffs dispute, that the First Amendment claim is barred under the doctrine of collateral estoppel. (Def. Br. at 23-25; Pl. Br. at 16-19; Reply at 11). Defendants rely on the Commissioner of Education's Decision, submitted as Exhibit J to the Silverman Affirmation, to argue that Plaintiffs' retaliation claim was raised before the Hearing Officer and in the appeal to the Commissioner of Education. (Def. Br. at 23-25). Plaintiffs respond that they did not fully and fairly litigate the retaliation claim at the administrative level. (Pl. Br. at 16-19). While the Court may take judicial notice of the Commissioner of Education's decision on this motion, the record remains insufficient to determine the extent of Corbia's opportunity to litigate his retaliation claim. *See Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp. 3d 60, 66 (W.D.N.Y. 2021) ("[T]he Court may consider the Commissioner's decision in connection with ruling on Defendants' motion to dismiss because it is a matter of public record of which the Court may take judicial notice."). Accordingly, a ruling on the collateral estoppel issue is premature. *See Balchan v. New Rochelle City Sch. Dist.*, No. 23-CV-06202, 2024 WL 4333417, at *3 (S.D.N.Y. Sept. 27, 2024) (citing *Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp. 3d 60, 70 (W.D.N.Y. 2021)).

Plaintiffs assert in their opposition brief that this claim is one for unreasonable search based on the search of Corbia's personal social media account (and potentially his house). (Pl. Br. at 21-22). Defendants seek dismissal of this claim for relief on the basis that there are no allegations of a search of Corbia's person, home, or property. (Def. Br. at 26; Reply at 13). Plaintiffs respond that a "search of some sort" must have been conducted of Corbia's Facebook account because "[i]f no search of Plaintiff's social media accounts were conducted, how could the alleged discriminatory posts found of Plaintiff's personal social media account, have made their way into Defendants' possession, and subsequently caused a full investigation and termination to ensue?" (Pl. Br. at 21). The Court agrees with Defendants.

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiffs allege only that the Ethics Committee "convene[d] and recommend[ed] to the School Board to retain a forensic investigator to search Corbia's electronic devices." (*Id.* ¶ 24). There are no allegations that a search was ever conducted. Plaintiffs cannot sustain a claim for a Fourth Amendment violation based on a hypothetical search that is discussed in their briefing but not alleged in their pleading. *See Hirsch v. New York*, 751 F. App'x 111, 114 (2d Cir. 2018) (affirming dismissal of a Fourth Amendment claim where "plaintiff ma[d]e no argument in his complaint . . . alleging that he or his property was subjected to an unreasonable search or seizure").

Accordingly, Plaintiffs' claim for a violation of the Fourth Amendment is dismissed.

C.  <u>Fifth Amendment</u>

Next, Plaintiffs allege that Corbia's rights were violated pursuant to the Fifth Amendment. (FAC ¶¶ 1, 5, 44, 59). There are no allegations explaining the theory underlying this claim for relief, but Plaintiffs explain in their opposition brief that the hearing involved

questions that violated Corbia's privilege against self-incrimination. (Pl. Br. at 23-24). Defendants seek dismissal of this claim on the basis that the Due Process Clause of the Fifth Amendment applies to federal actors only and, separately, that there was no criminal element to this investigation such that Corbia risked self-incrimination. (Def. Br. at 28-29). Plaintiffs insist that the hearing held against Corbia should be deemed quasi-criminal but do not respond to Defendants' argument that the Fifth Amendment regulates due process violations by federal actors only. (Pl. Br. at 23-24; Reply at 14-15).

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Where, as here, no defendant is a federal actor, the Due Process Clause of the Fifth Amendment is not applicable. *See Connecticut Citizens Def. League, Inc. v. Thody*, 664 F. Supp. 3d 235, 249 (D. Conn. 2023), *aff'd*, No. 23-724-CV, 2024 WL 177707 (2d Cir. Jan. 17, 2024)*; see also Burgess v. Cnty. of Rensselaer*, No. 03-CV-00652, 2006 WL 3729750, at *5 (N.D.N.Y. Dec. 18, 2006).

Accordingly, Plaintiffs' Fifth Amendment claim is dismissed.

## D.  Sixth Amendment

The First Amended Complaint also alleges a violation of Corbia's rights pursuant to the Sixth Amendment. (FAC ¶¶ 1, 5, 44, 49, 59). Specifically, Plaintiffs allege that Defendants' use of the "unauthorized third party" theory as a basis to remove Corbia from the Board violates his Sixth Amendment right to counsel and right to communicate with counsel. (*Id*. ¶ 49). Defendants seek to dismiss this claim on the basis that the Sixth Amendment's guarantee of the right to counsel applies only to criminal proceedings, not civil actions. (Def. Br. at 29-30; Reply at 15).

Plaintiffs respond that the Sixth Amendment applies because the hearing and removal proceedings were "quasi-criminal in nature" and, therefore, the "Board's determination to remove Corbia for forwarding a copy of the report to his lawyer . . . illegally punishes him for communicating in confidence with his counsel." (Pl. Br. at 24).

The Sixth Amendment guarantees the right to counsel in "*all criminal prosecutions*." U.S. Const. amend. VI (emphasis added). "[I]t is well-established that the Sixth Amendment right to effective assistance of counsel does not apply in civil actions." *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 669 (S.D.N.Y. 2007). The Sixth Amendment's "reach has been extended to quasi-criminal proceedings, i.e., proceedings that are 'very much akin to making an official adjudication of criminal culpability.'" *DeMartino v. New York*, No. 12-CV-03319, 2013 WL 3226789, at *11 (E.D.N.Y. June 24, 2013), *aff'd*, 586 F. App'x 68 (2d Cir. 2014).

Here, there are no allegations that Corbia engaged in any criminal proceedings. Plaintiffs contend that the hearing and removal proceedings were quasi-criminal in nature because inquiries were made as to whether Corbia was being truthful in claiming that he did not create the Facebook posts, and because Corbia's answers to such questions "could have led to self-incrimination in a future criminal proceeding." (Pl. Br. at 23-24). But the mere fact that inquiries were made as to Plaintiff's truthfulness is not a basis on which to consider administrative proceedings to be quasi-criminal proceedings akin to a criminal prosecution. Accordingly, the hearing and removal proceedings do not implicate the Sixth Amendment.

Plaintiffs' Sixth Amendment claim is, therefore, dismissed.

E.  Fourteenth Amendment

Finally, the First Amended Complaint vaguely alleges a violation of the Fourteenth Amendment. (FAC ¶¶ 1, 5, 44). Plaintiffs provide more color to this claim in their opposition brief, asserting that (1) "Defendants' actions as set forth in the [First Amended Complaint] rise to the level of a violation of the Fourteenth Amendment" and are "likely to be considered arbitrary"; and (2) Corbia was not provided adequate "pre-deprivation process"—specifically, "the hearing, was a one-sided ambush with a clearly biased mediator who was hand selected by the representatives of the Defendants/the Defendants themselves." (Pl. Br. at 30). The Court infers through this amplification that Plaintiffs purport to allege both substantive and procedural due process violations against Defendants.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. Plaintiffs must demonstrate, in order for a substantive due process claim to survive a motion to dismiss, "that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity. . . .'" *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quoting *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002)). Defendants argue that Plaintiffs' substantive due process claim fails because there are no plausible allegations of any conscience shocking behavior. (Def. Br. at 27-28). Here, Plaintiffs allege that Defendants used an investigation into Facebook posts as pretext to remove Corbia, their political rival, from the Board. (FAC ¶ 3). This alleged conduct, even taken as true, does not amount to conduct that

is so "truly brutal and offensive to human dignity" as to shock the conscience. *Lombardi*, 485 F.3d at 81.

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). Defendants argue that Plaintiffs' procedural due process claim fails because Corbia was provided adequate pre-deprivation process and, regardless, could have sought post-deprivation relief under Article 78. (Def. Br. at 27-28).

Even assuming that Corbia had a constitutionally protected liberty interest, Plaintiffs failed to plausibly allege insufficient process. Plaintiffs' assertion in their opposition brief that the hearing was a "one-sided ambush with a clearly biased mediator who was hand selected by the [Defendants]" appears nowhere in the First Amended Complaint and thus cannot be considered in evaluating the sufficiency of Plaintiffs' Fourteenth Amendment claim. (Pl. Br. at 30). Plaintiffs do allege, however, that evidence and testimony was given at a multi-day hearing before the Hearing Officer and that Corbia was able to attend the hearings though his counsel. (FAC ¶¶ 30, 43). The complaint therefore alleges "constitutionally adequate, not infirm, procedures." *King*, 2023 WL 2398679, at *3. Further, Plaintiffs do not contest, and thus concede, Defendants' argument that Corbia could have sought post-deprivation relief in New York state

court under Article 78 of the New York Civil Practice Law and Rules.[6] (Reply at 13-14). Accordingly, Plaintiffs have failed to allege that Corbia was denied procedural due process. *See King*, 2023 WL 2398679, at *3 (citing *Locurto v. Safir*, 264 F.3d 154, 173, 175 (2d Cir. 2001) (approving of a "minimal" pre-deprivation hearing followed by the availability of an Article 78 proceeding, which "constitutes a wholly adequate post-deprivation hearing for due process purposes")).

Plaintiffs' Fourteenth Amendment claim is dismissed.

II.      Second Claim for Relief: § 1983 Conspiracy

Plaintiffs' Second Claim for Relief alleges that Defendants engaged in a conspiracy to remove Corbia, a political opponent, from office. (FAC ¶¶ 56-63). Defendants argue that Plaintiffs' conspiracy claims fail because there are no allegations that Defendants acted "in concert" and because of the intracorporate conspiracy doctrine. (Def. Br. at 31-32). Plaintiffs rely on out of circuit precedent in arguing that the conspiracy claim survives because Defendants attempted to engage in anti-competitive actions in an effort to advance their own agendas. (Pl. Br. at 26-27).

Here, Corbia fails to offer any nonconclusory facts establishing either the existence of a conspiracy or a meeting of the minds necessary to support such a claim. *See Ortiz v. Ledbetter*, No. 19-CV-02493, 2020 WL 2614771, at *6 (S.D.N.Y. May 22, 2020); *Liner v. Fischer*, No. 11-CV-06711, 2013 WL 4405539, at *6 (S.D.N.Y. Aug. 7, 2013) ("[B]are statements that Defendants 'conspired' are insufficient to state an actionable claim for conspiracy."). Plaintiffs'

---

[6] *See, e.g.*, *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (explaining that where a plaintiff fails to respond to a defendant's argument on a motion to dismiss, the point is conceded); *Felske v. Hirschmann*, No. 10-CV-08899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

cursory allegations that Defendants "acted in concert" and took "concerted and coordinated actions" (FAC ¶¶ 57, 59) are insufficient. *See King v. City of New York*, 581 F. Supp. 3d 559, 577 (S.D.N.Y. 2022), *aff'd*, No. 22-231, 2023 WL 2398679 (2d Cir. Mar. 8, 2023). Moreover, this claim is barred by the intracorporate conspiracy doctrine because all Defendants are either a Board member or the Superintendent of Schools, and thus are "all subordinate entities or individual employees of a single municipal entity (*i.e.*, the District)." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-05693, 2017 WL 9485647, at *28 (E.D.N.Y. Feb. 23, 2017), *adopted by*, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017); *see also Pajazetovic v. City of Utica, New York*, No. 18-CV-01496, 2021 WL 4440473, at *11 (N.D.N.Y. Sept. 27, 2021) ("Courts in the Second Circuit recognize the 'intracorporate conspiracy doctrine,' which holds that the 'officers, agents, and employees of a single corporate entity are legally incapable of conspiring together.'" (quoting *Peck v. Cty. of Onondaga, New York*, No. 21-CV-00651, 2021 WL 3710546, at *15 (N.D.N.Y. Aug. 20, 2021))).

Accordingly, Plaintiffs' conspiracy claim is dismissed.

### III.    Third and Fourth Claims for Relief: State law claims

Plaintiffs' Third and Fourth Claims for relief assert claims for negligent infliction of emotional distress and loss of consortium pursuant to New York State law. (FAC ¶¶ 64-74). Defendants argue that these claims are barred by the statute of limitations. (Def. Br. at 32).

"In New York, specific procedural requirements govern tort claims that a plaintiff may bring against a municipality." *Hotter v. Schriro*, No. 16-CV-06586, 2018 WL 2081863, at *8 (S.D.N.Y. Mar. 29, 2018) (citing N.Y. Gen. Mun. Law § 50-i(1)(c)). Pursuant to New York General Municipal Law § 50-i(1)(c), "a plaintiff must file a notice of claim within 90 days of when the claim accrued." *Id.* (citing N.Y. Gen. Mun. Law § 50-e(1)(a)). "Furthermore, § 50-

i(1)(c) states that a plaintiff must bring the action within one year and 90 days after the happening of the event on which the claim is based." *Id*. (citing N.Y. Gen. Mun. Law § 50-i(1)(c)). Here, the Board voted to remove Corbia on April 14, 2021. (FAC ¶ 17). The ninety-day statute of limitations therefore expired on July 13, 2021, well before this action was commenced on September 18, 2023. (Doc. 1). Plaintiffs offer no basis for their argument that there is an issue of fact as to the date of accrual. (Pl. Br. at 27; Reply at 16).

Accordingly, Plaintiffs' state law claims are dismissed as time-barred.

IV.    <u>Qualified Immunity</u>

Defendants argue that they are shielded from liability under the doctrine of qualified immunity. (Def. Br. at 30-31; Pl. Br. at 25).

While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 493 (S.D.N.Y. 2015) ("In order for the doctrine of qualified immunity to serve its purpose, the availability of qualified immunity should be decided 'at the earliest possible stage in litigation.'" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435-36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013)). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those

that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, the Court has already found that Plaintiffs alleged a viable claim for First Amendment retaliation. Corbia's rights were "clearly established" for this claim because the Second Circuit has adequately "defined the contours of the right with reasonable specificity," *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990), as discussed *supra*. Furthermore, Defendants fail at this stage to meet their burden to show that their retaliatory actions were objectively reasonable. Accordingly, at this stage, Defendants are not shielded from liability on the basis of qualified immunity. *See Velez*, 401 F.3d at 100 (concluding as to the First Amendment violation that "qualified immunity does not, at this time, shield" defendant from this cause of action.").

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss is DENIED as to the First Amendment claim for relief. The motion is GRANTED as to all other claims for relief.

Defendants are directed to file an answer to the First Amended Complaint within 14 days of the date of this Order. The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 26.

**SO ORDERED.**

Dated:    White Plains, New York
         December 5, 2024

PHILIP M. HALPERN
United States District Judge